STATE of North Dakota, Plaintiff and Appellant,

v.

Julie Ann GOELLER, Defendant and Appellee.

Crim. No. 611–A.

Supreme Court of North Dakota.

Feb. 6, 1979.

John T. Paulson, State's Atty., Valley City, for plaintiff and appellant; argued by Mikal Simonson, Asst. State's Atty.

Irvin B. Nodland and Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendant and appellee; argued by Julie Ann Goeller, pro se.

ERICKSTAD, Chief Justice.

In this case, the State's Attorney of Barnes County has taken an appeal on behalf of the State of North Dakota from an order of the Barnes County Court of In-creased Jurisdiction (the Honorable George E. Duis, Judge of the Cass Counts Court presiding), dated the 13th of July, 1978.

The pertinent part of the order follows:

"The defendant having been convicted of possession of a controlled substance, and having been sentenced to pay a fine and to serve an additional two days in the County Jail, and

"Application having been made to suspend the jail sentence on condition of the fine being paid,

"IT IS ORDERED That the balance of the jail sentence be suspended on condition that the fine imposed is paid."

Julie Goeller, the appellee in this case, had previously taken on the 22nd of June, 1977, an appeal from the judgment and sentence imposed by Judge Duis on the 22nd day of June, 1977. Although the sentence does not appear in the record filed with this court, it appears from our decision of *State v. Goeller*, 264 N.W.2d 472, 473 (N.D.1978), *cert. den. Goeller v. North Dakota*, —— U.S. ——, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978), that Goeller waived a jury trial and was found guilty of the charge of possessing a controlled substance in violation of Section 19–03.1–23(3), N.D. C.C. During oral argument, we were informed by the Assistant State's Attorney of Barnes County, that in the original judgment, Goeller was sentenced to serve 30 days in the county jail, that all but three days of that sentence was suspended, that credit was given on the three days for one day of confinement prior to trial, and that a fine of $200 was imposed.

Goeller, being unsuccessful in her appeal from that judgment as indicated by our opinion in *State v. Goeller, supra,* contacted Judge Duis to secure a suspension of the balance of the jail sentence.

The judge, without serving any notice upon the State, apparently acting under Rule 35, N.D.R.Crim.P.,[1] suspended the bal-

1. "The sentencing court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The sentencing court may reduce a sentence within 120 days after the sentence is

ance of the jail sentence. This precipitated the appeal which we have under consideration today.

The State contends that *State v. Rueb,* 249 N.W.2d 506 (N.D.1976), controls in this case.

In that case, Rueb was charged with the offense of indecent liberties with minor children in violation of Section 12–30–11, N.D.C.C. Indecent liberties at that time constituted a felony and was punishable by imprisonment in the penitentiary for not less than one year nor more than 15 years.

After an evaluation at the State Hospital, Rueb pled guilty and was sentenced to the penitentiary for a term of three years. Within the 120 days provided for in Rule 35, N.D.R.Crim.P., counsel on behalf of Rueb filed a written motion with the court requesting a reduction of the sentence. On the same day, without notice to the State, the judge modified the sentence by increasing the sentence from three to five years, by deferring the balance of the sentence, and by placing Rueb upon probation. Although we did not remand the case for hearing upon notice to the State's Attorney of the application for a reduction in the sentence, we said:

"We construe the provisions of Rules 35, 47, and 49, NDRCrimP, to mean that whenever a motion is made by an attorney for a defendant to reduce a sentence, such motion must be served upon the State's Attorney, and where the application is made by the defendant pro se the court should give notice of such application to the State's Attorney. By giving such notice, the court will have the benefit of the two sides and will also eliminate any unwarranted criticism of the judicial process.

\*     \*     \*     \*     \*     \*

We deem it advisable, if not mandatory, that the sentencing judge, whenever reducing the sentence as permitted by Rule 35, in addition to other requirements stated hereinbefore, also give his reasons for the reduction." 249 N.W.2d at 511–12.

Contrasting *Rueb* with the instant case, we note that there are three similarities between the two cases: (1) the application for a reduction in the sentence was made within the 120 days provided for in Rule 35, N.D.R.Crim.P.; (2) the application was made without notice to the State or an opportunity on behalf of the State to be heard; and (3) the judge gave no reasons for his actions. The cases are dissimilar in that: (1) Rueb was convicted of a felony which called for punishment up to 15 years in the State Penitentiary, whereas Goeller was charged with possession of a controlled substance, to wit, marijuana, which is a class A misdemeanor with a maximum punishment of imprisonment of one year, a fine of $1,000, or both; (2) the judge in *Rueb* first imposed a substantial sentence of three years and then without notice, although technically increasing the sentence to five years, deferred the balance of the sentence; whereas, in the instant case, the judge at time of the sentencing imposed the 30 days sentence, then immediately suspended all but three days of the sentence, giving credit also for one day of the three days for confinement prior to trial; and (3) in *Rueb* the judge acted, apparently on the last day of the 120 days, so there was no time after learning of the reduction in the sentence for the State to apply for a hearing within the 120-day-period provided for in Rule 35, N.D.R.Crim.P.; whereas, in the instant case, Goeller applied for relief, the judge granted the relief, and the State learned of the granting of the relief in ample time to make a motion for a hearing before the judge to examine into the appro-

imposed, or within 120 days after receipt by that court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court of the United States denying review of, or having the effect of upholding a judgment of conviction. The court may also reduce a sentence upon revoca-

tion of probation as provided by law. Relief under this Rule may be granted by the court only upon motion of a party or its own motion and notice to the parties. If the sentencing court grants relief under this Rule, it shall state its reasons therefor in writing." Rule 35, N.D.R.Crim.P.

priateness of granting the reduction, all within the 120-day-period provided for in Rule 35, N.D.R.Crim.P.

Goeller contends in our court that Judge Duis granted her request for a suspension of the balance of her sentence after she explained to him the circumstances surrounding her incarceration on the charge of possession of the controlled substance, and her subsequent confinement for contempt of court.

Although we have no record of what transpired during the meeting of Judge Duis and Goeller, we have some knowledge of the circumstances surrounding Goeller's arrest on the marijuana charge and her conviction of contempt of court from our decision in *Matter of Cieminski,* 270 N.W.2d 321 (N.D.1978). In that case, we publicly censured Judge Cieminski, partially for his conduct in conjunction with the arraignment of Goeller on the marijuana charge.

In *State v. Goeller,* 263 N.W.2d 135 (N.D. 1978), we sustained Judge Cieminski in his conviction of Goeller for contempt of court, but we vacated the sentence and remanded the case for sentencing by a judge to be appointed by the Presiding Judge of the First Judicial District. In that case, after reviewing other decisions involving contempt of court, we said:

"Our evaluation of the contempt orders in these cases, even without applying these standards, leads us to conclude that the trial judge acted improvidently in imposing the harsh sentence. We readily acknowledge that 'giggling, laughing, and smirking' can be disturbing to a judge and a reprimand would be entirely justified. The disrupting conduct was admonished by the judge in these cases, as it should have been. There was, however, no clear warning as to the specific sanction to be imposed for the repetition of the conduct. Under the circumstances here, the sanction of ten days incarceration in the county jail was arbitrary, was not necessary to prevent demoralization of the court's authority, and does not

satisfy the appearance of justice. It was clearly an 'over-kill' and was apparently later recognized as such by the trial judge when he subsequently vacated one-half of the sentence." 263 N.W.2d at 138–39.

Although there is no record of what transpired at the meeting between Judge Duis and Goeller in the instant case on the occasion of her request for a reduction in her sentence in conjunction with a marijuana possession conviction, we think it is reasonable to believe that the court did consider Goeller's plea in light of the decisions involving the personalities of Judge Cieminski and Goeller.

It is our understanding that Goeller was arrested on the marijuana charge and placed in confinement of the county jail at about 10:30 p. m. on Wednesday, March 30, 1977, that she was retained in custody until Friday, April 1, 1977, at approximately 2:30 p. m., when she was brought before Judge Cieminski on her initial appearance or for arraignment, that at that time the incidents took place which resulted in Judge Cieminski's decision holding her in contempt and sentencing her to confinement for 10 days, that thereafter she was returned to confinement and was kept confined in the county jail until some time Tuesday, April 5, 1977. She was apparently given credit for one of the days of confinement prior to the initial appearance before Judge Cieminski by Judge Duis when he reduced her three-day-sentence to two days, but that leaves the better part of another day for which she has not been given any credit for confinement prior to her initial appearance.[2]

If she were given another day of credit for the 16 hours additionally that she was incarcerated before her initial appearance, we would have an appeal involving an unserved sentence of one day in the county jail.

Although we are not agreed upon what circumstances should justify less formality than that which we prescribed in *State v. Rueb, supra,* we are agreed that under the

---

**2.** "Credit against any sentence to a term of imprisonment shall be given by the court to a defendant for all time spent in custody . . ." § 12.1–32–02(2), N.D.C.C.

circumstances of this case neither the interests of the State nor the interests of the defendant justify a reversal of the order appealed from in this case.

Considering all the circumstances of this case, it appears to us it would be highly unlikely, if we were to reverse Judge Duis' order and remand the case for a hearing before another judge, that the result would be different.

True, if that were done the judge would be required to serve notice upon the State and provide the State with an opportunity to be heard on the issue, and if the judge were to reduce the sentence, the judge would be required to state the reasons therefor.

█ In the future whenever action is taken by a judge without notice to the State under Rule 35, and counsel for the State learns of such action and believes that the action is taken improvidently, we shall require that the State move within the 120-day-period if at all possible, and if not possible, within 10 days of service upon the State of the order modifying the sentence, for a rehearing at which the State could be heard. Such a procedure would eliminate appeals such as this one. To the extent of permitting jurisdiction to remain in the sentencing court beyond the 120-day-period to hear such a motion and to render an appropriate decision thereon, we add to our decision in *Rueb* consistent with our amendment to Rule 35, N.D.R.Crim.P., effective January 1, 1979.

For the reasons stated in this opinion, the appeal is dismissed.

PEDERSON, J., and DOUGLAS B. HEEN and NORMAN J. BACKES, District Judges, concur.

The Honorable DOUGLAS B. HEEN, District Judge, and The Honorable NORMAN J. BACKES, District Judge, sitting in place of The Honorable WILLIAM L. PAULSON, Justice, and The Honorable GERALD W. VANDE WALLE, Justice, disqualified.

SAND, Justice (concurring specially).

I agree with the disposition made in the opinion authored by Chief Justice Erickstad but wish to give additional reasons for agreeing, which reasons are set out later herein.

In *State v. Rueb*, 249 N.W.2d 506 (N.D. 1976), we said:

"The adversary system is a part of our judicial system and generally all proceedings employ or resort to this system, except for ex parte proceedings. Our Constitution provides for public trials and the public's right to know has become engrafted on our system of government by appropriate laws. The star chamber proceedings have never been favored under our judicial system. The State's Attorney represents the public. He was entitled to a notice.

.    .    .    .    .

"In addition to the specific requirements of the Rules, we are convinced that it is for the protection and to the benefit of the sentencing judge to receive information and argument from the State's Attorney whether or not a sentence should be reduced. This is a safety measure that the judge should insist upon even if the Rules did not require this.

.    .    .    .    .

"By giving such notice the court will have the benefit of the two sides and will also eliminate any unwarranted criticism of the judicial process. It has been stated that it is not sufficient that justice be done but that justice must also appear to be done. This would give recognition to this philosophic concept.

.    .    .    .    .

"Because Rule 35, NDRCrimP, has not been previously construed by our court or by other jurisdictions in our general area, and the conclusions we reached herein are not obvious from the mere reading of Rule 35, we deem it inappropriate to apply our conclusions to the instant case, but will require in all cases hereafter that these procedures as outlined above, be followed."

The concern we expressed in *Rueb* became a reality later as evidenced in *Judicial Qualifications Commission v. C. James Cieminski*, 270 N.W.2d 321, wherein a charge was leveled against the Judge accusing him of bargaining regarding five days of a sentence on a criminal contempt charge arising out of an ex parte contact by Goeller's attorney without giving notice to the State's Attorney. The charge was made by Goeller in a disciplinary proceeding. In this instance Goeller, according to her representation made to this court in oral argument, personally contacted the Judge and asked him to reduce the sentence without giving notice to the State's Attorney. In this respect I find it reprehensible on the part of Goeller to make this type of contact knowing full well the consequences that resulted from another contact by her attorney at a previous occasion in a different case. These personal approaches should not be condoned. In this instance the greater share of the blame must be placed on the Judge. Under the principles of law announced in *Rueb* he should have given notice to the State's Attorney upon being approached. But the Judge in question is no longer in office and for this reason it is difficult to have the record reconstructed or have the matter remanded to him to correct the faulty proceedings.

The record in this case, or rather the nonexistence of a record (not even an affidavit from either party as to what happened) is a matter I cannot overlook. When this court acts as an appellate court it is the record upon which the review is made. Here there was no record of any consequence. In dismissing the appeal, I would have given additional reasons that there was no record and the appeal was untimely under the circumstances.