Filed 6/21/23  P. v. Duley CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KELLY MICHAEL DULEY,<br><br>    Defendant and Appellant. | F083713<br><br>(Super. Ct. No. F13907121)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Wallin & Klarich and Stephen D. Klarich for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

In defendant Kelly Michael Duley's initial appeal, we affirmed the judgment but remanded for the trial court to exercise its discretion as to whether to strike defendant's two prior serious felony enhancements (Pen. Code,[1] § 667, subd. (a)(1)) pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill No. 1393). (*People v. Duley* (June 17, 2020, F077020) [nonpub. opn.] (*Duley*).) On remand, the trial court declined to strike the prior serious felony enhancements and ordered that the judgment would remain as originally pronounced. Defendant now challenges his convictions and sentence on various grounds.

We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Defendant struck a woman in the face with a cocktail glass during a bar fight, resulting in lacerations to her face and chest that required a total of 38 stitches. He was convicted of battery with serious bodily injury (§ 243, subd. (d); count 1) and assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1); count 2), with an enhancement to each count for personally inflicting great bodily injury on the victim (§ 12022.7, subd. (a)). In bifurcated proceedings, the trial court found defendant had suffered two prior serious felony convictions, which also constituted strikes (§§ 667, subds. (a)-(i), 1170.12, subds. (a)-(d)). Defendant was sentenced to an aggregate term of 38 years to life, which included two 5-year terms for the prior serious felony enhancements imposed pursuant to section 667, subdivision (a)(1). (*Duley*, *supra*, F077020.)

Defendant raised numerous contentions in his initial appeal. He argued (1) the court erroneously instructed the jury on an inapplicable portion of the definition of "deadly weapon"; (2) the prosecutor engaged in several instances of misconduct during closing argument; (3) the court should have held a competency hearing pursuant to

---

[1] Undesignated statutory references are to the Penal Code.

2.

section 1368 after defendant disrupted closing argument; (4) trial counsel was ineffective in several instances; (5) these errors cumulatively prejudiced his right to due process; (6) his post-conviction *Faretta*[2] request was improperly granted and/or his self-representation should have been terminated at the sentencing hearing; (7) the trial judge engaged in misconduct; and (8) the matter must be remanded to a new sentencing judge to permit the court to consider striking defendant's prior serious felony convictions pursuant to Senate Bill No. 1393. We affirmed, but remanded for the trial court to exercise its discretion as to whether to strike the two prior serious felony conviction enhancements pursuant to Senate Bill No. 1393. (*Duley*, *supra*, F077020.)

On remand, defendant was appointed counsel. In quick succession, however, at least five appointed attorneys were relieved due to conflicts. On January 14, 2021, defendant, then unrepresented, made an oral motion requesting discovery from the district attorney. The court reserved the motion "until appointment of counsel and until court is notified of the details of discovery request."

At a May 13, 2021 hearing, the court memorialized that, at a hearing on April 8, 2021, defendant "launched into what I would modestly refer to as a profanity-laced tirade against myself and this Court. He made extremely vulgar references to myself and even my wife."[3] An attorney who was present on May 13, 2021, was noted "to be appointed [to represent defendant] pending conflict check." After the court and defendant's potential attorney discussed a briefing schedule, defendant requested to speak with his attorney on the record. Defendant stated, "He's going to be making a request that the discovery, the motion for discovery be forwarded to both him and I, the motion that you granted that [the prosecutor] was to forward the discovery on the day of my sentencing.[4]

---

[2] *Faretta v. California* (1975) 422 U.S. 806.

[3] A transcript of the April 8, 2021 hearing is not contained in the record on appeal.

[4] On December 8, 2017, prior to his initial sentencing, defendant filed a series of documents relating to discovery. At sentencing, the court noted that defendant had filed a

We just had a discussion about it. He obviously forgot to make that request that that order that you made and granted be enforced." Defendant's counsel stated, "I'm not making any such request." Defendant stated, "Then you're fired you son of a bitch." Counsel responded, "I have not reviewed any discovery orders. I don't necessarily know that it's right yet to make any representations specifically requesting that the discovery be sent directly to the [d]efendant. . . . And this is the second time I have spoken just this morning with [defendant] and previously on the phone the conversation went worse than it did now on the record." Subsequently, counsel from the May 13, 2021 hearing declared a conflict and was removed.

Thereafter, on October 5, 2021, various documents from defendant were filed with the court. The cover page of the documents states the documents were filed by defendant, in propria persona. However, a proof of service indicates the documents were served by attorney Kathleen Clack. The first document in the package was a declaration, signed by defendant on September 28, 2021, declaring that the statements made in the documents were true and correct. The second document was a medical report, dated February 27, 2017, stating defendant presented on that date as anxious and nervous.[5] The provider noted that defendant was compliant with some of his medications but not others and a mood stabilizer was discussed. The provider noted in the mental status examination that defendant "appears to be delusional of paranoid nature" but that his cognitive functions were within normal limits and his speech was "overproductive,

discovery motion directed to the district attorney, seeking material pursuant to *Brady v. Maryland* (1963) 373 U.S. 83, 87. The court stated, "I don't think a formal motion is ever required in regards to *Brady* obligations, because that's the People's duty. . . . [T]hat's an ongoing duty. It applies to both trial and sentencing matters. I entrust the District Attorney will fulfill their requirements under *Brady*. Again, nothing specifically requested, just general or generic statements." (Italics added.)

[5] On February 27, 2017, pretrial motions were heard in relation to defendant's trial. Additional motions were heard on February 28, 2017, and jury selection commenced on March 1, 2017.

relevant and coherent." The third document was a copy of a "Request for Discovery P.C. 1054.5 and Declaration," which defendant previously had filed on December 8, 2017. (Some capitalization omitted.) Therein, defendant requested all his mental health records from the prior 27 years and numerous items of evidence relating to the offenses. In the accompanying declaration, which also previously was filed December 8, 2017, defendant declared his case file had been vandalized by his prior counsel, who defendant alleged was not acting in defendant's best interests and failed to raise defendant's lack of competency to stand trial.

On October 6, 2021, Clack appeared as defendant's newly retained private counsel and agreed to a continuance to October 19, 2021. Clack was formally substituted as attorney of record on October 19, 2021.

At the October 19, 2021 hearing, the court asked Clack whether she wished to present her arguments regarding Senate Bill No. 1393 in writing. Clack responded, "[W]e want to vacate the sentence based upon incompetence at trial." She stated the proof in support of this request was defendant's filings in propria persona, which she acknowledged she had filed on his behalf. The court stated Clack could file "whatever motions [she'd] like or seek extraordinary relief from the California Supreme Court or someone else" because only the Senate Bill No. 1393 issue was before the court.

Clack agreed to make her arguments regarding Senate Bill No. 1393 in writing, but reiterated that the sentence should be vacated based on defendant's incompetence to stand trial. The court noted that defendant had made numerous arguments on appeal, which were ruled on. Clack stated, "I'm making the motion based on new evidence in your court now. He was not able to stand trial. He was not mentally competent. And actually, I believe at trial he said you granted it, but the evidence was set forth and it was

5.

dropped right before trial."[6]  The court asked Clack to direct her efforts toward briefing the Senate Bill No. 1393 issue.

Clack asked the judge to recuse himself "based on the fact that the evidence has been ignored."[7]  The court denied the request.  The court reiterated that it had been directed by this court to address the prior serious felony convictions, which it intended to do on November 9, 2021.  Defendant interjected to ask whether the court had received his declaration and to insist the court was required to consider it.  The court stated the filing was improper because defendant was represented by counsel.  The court confirmed that it had received defendant's filings but had not reviewed them.  Defendant argued the court was required to consider the documents, and the following colloquy ensued:

> "THE COURT:  [Defendant], you have an attorney.
>
> "THE DEFENDANT:  I'm not finished.
>
> "THE COURT:  You are finished.
>
> "[THE DEFENDANT]:  I am not finished.
>
> "THE COURT:  Your attorney will –
>
> "[THE DEFENDANT]:  Fuck you, you cock-sucking mother fucker.  Fuck your mother.  You see that.  Fuck your mother."

---

[6] Although unclear, this contention appears to stem from defendant's misunderstanding of the court's ruling on the People's motions in limine, and repeats an argument defendant also raised in posttrial proceedings.  In motions in limine, the People moved to exclude at trial statements regarding defendant's psychological condition.  The People clarified that it wished to exclude evidence that defendant suffered emotional distress as a result of the incident.  The court stated any effect of the incident on defendant would be irrelevant and, in any event, testimony regarding a psychological condition may require expert testimony, which neither party had proffered.  The court then stated that if it heard testimony regarding a psychological condition it was "gonna stop the proceedings, but if it's simply, Gosh, I was scared, something like that, well, that's fine."

[7] In defendant's first appeal, we denied his request to disqualify the trial judge on remand.  (*Duley*, *supra*, F077020.)

6.

The court muted defendant, who was appearing remotely. Clack stated, "This is the basis of my request for recusal: My client needs an unfair {sic}, unbiased review." The court again denied the request for recusal. The court reiterated that argument on the Senate Bill No. 1393 issue was set for November 9, 2021, and the hearing was concluded.

The People filed a resentencing brief and, in response, Clack filed an "Objection to Sentencing Adjustment Hearing Subject to Discovery Production Ordered December 22, 2017; and Argument in Support of Motion to Vacate Sentence Based on Mental Incompetence at Trial." (Some capitalization omitted.) Clack's filing contained no argument but attached as exhibits defendant's previously filed documents and "a true and correct copy of the Certified Transcript of On April walls behind and beside jurors above the seat locations and in front of the chair rails [*sic*]," which appears to be a transcript of the October 19, 2021 hearing.

The court issued a written ruling on December 16, 2021. The court noted, "[C]ounsel for [defendant] has not directly addressed the issue before the court." The court stated it disagreed with defendant's assertion that the court was required to entertain his request for discovery and dismiss his case. The court acknowledged its discretion to strike the prior serious felony convictions, but declined to do so on the following grounds:

> "The court has considered all of the attendant circumstances in this case. They include the evidence at trial, victim impact statements, the report of the probation officer (sentencing RPO), the facts of the serious priors alleged, as well as the additional criminal history of the defendant. The court recognizes that it has discretion to strike the serious prior convictions when imposing judg[]ment. It is this court's considered opinion that doing so would not be in the interest of justice. The defendant has a significant violent criminal history as well as other criminal history. He has shown no remorse for his conduct. He chooses to blame the victim, attorneys or the court for a situation he is solely responsible for. The original judg[]ment of the court and its attendant sentencing orders will remain as originally pronounced."

7.

Clack initially represented defendant in the instant appeal from the court's sentencing order.[8]  However, following filing of the record on appeal, a different attorney was substituted as counsel of record for defendant.  Appellate counsel filed a request for judicial notice of the record in defendant's prior appeal, which was granted over the People's objection.  Appellate counsel argues (1) insufficient evidence supports the court's prior finding that defendant suffered a prior strike conviction and, to the extent defendant's trial counsel and prior appellate counsel failed to raise the issue, they were ineffective; (2) the trial court erred in ruling on the Senate Bill No. 1393 issue in light of counsel's declaration that there was missing discovery that would be relevant to the exercise of the court's discretion; (3) Clack provided ineffective assistance of counsel by presenting no argument on the Senate Bill No. 1393 issue; and (4) these combined errors violated defendant's due process rights.[9]

---

[8] During the course of Clack's representation, she filed a request for judicial notice of the trial court's ruling, which was denied on the ground the ruling should be included in the normal record on appeal, which had not yet been filed.  After the record on appeal was filed, Clack filed a request to augment the record with the reporter's transcript for proceedings on December 22, 2017, as well as request for judicial notice of same.  The motion to augment was granted and the request for judicial notice was denied as moot.  Ultimately, however, the deputy clerk for the Fresno County Superior Court determined that the reporter's transcript for proceedings on December 22, 2017, had been provided with the initial record on appeal and, thus, no further transcripts were provided.

[9] Meanwhile, Clack filed an "Application of Kelly Duley for Leave to File Brief as Amicus Curiae."  (Some capitalization omitted.)  Therein, Clack represented that she was "amicus counsel" for defendant.  In the proposed amicus brief, Clack argued (1) it was error for the court to allow trial to proceed in light of defendant's "suppressed history of mental incompetence" (capitalization omitted), and (2) the prosecutor's failure to obtain and produce evidence of defendant's incompetence constituted a *Brady* violation.  In a separate filing, Clack additionally requested that we take judicial notice of various documents already contained in the record on appeal.  By separate order, both the request for leave to file an amicus brief and the request for judicial notice were denied.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE SUPPORTING PRIOR STRIKE CONVICTIONS

Defendant contends insufficient evidence supports the trial court's finding that he suffered two prior strike convictions, and trial and prior appellate counsel were ineffective in failing to raise this issue. We conclude these claims are not properly before us in this appeal.

We note this issue was not raised in the trial court on remand – nor could it have been. In defendant's prior appeal, we affirmed the judgment in its entirety but remanded for the court to exercise its discretion with regard to whether to strike the prior serious felony enhancements pursuant to Senate Bill No. 1393. Upon issuance of the remittitur, the trial court was revested with jurisdiction, "*but only to carry out the judgment as ordered by the appellate court.*" (*People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366.) "[T]he terms of the remittitur define the trial court's jurisdiction to act. 'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled." ' " (*Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774, fn. 5.) Thus, the trial court's jurisdiction was limited to "the making of orders necessary to carry the judgment into effect." (*People v. Ainsworth* (1990) 217 Cal.App.3d 247, 251-252; accord, *People v. Maggio* (1929) 96 Cal.App. 409, 411.)

Similarly, an appeal following remand does not present a wholesale opportunity for defendant to raise sentencing challenges he failed to raise in his first appeal. " '[W]hen a criminal defendant could have raised an issue in a previous appeal but did not do so, the defendant may be deemed to have waived the right to raise the issue in a subsequent appeal, absent a showing of good cause or justification for the delay.' " (*People v. Murphy* (2001) 88 Cal.App.4th 392, 395 (*Murphy*).) On this point, *Murphy* is instructive. There, we remanded for the trial court to exercise its discretion whether to vacate one or more prior strike findings under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, but we did not reverse the sentence and otherwise affirmed the judgment.

9.

On remand, the trial court declined to vacate the strike findings and did not resentence the defendant. (*Murphy*, at pp. 393-395.) On appeal from that ruling, the defendant raised additional contentions regarding his sentence, which we declined to address because "the scope of the issues before the court is determined by the remand order." (*Id*. at pp. 396-397.) Thus, because the trial court did not resentence the defendant, "the matter of [the defendant's] sentence was not again before it," and the defendant was not permitted to argue, in his second appeal, additional sentencing issues that could have been, but were not, raised in his first appeal.[10] (*Murphy*, *supra*, at p. 397; accord, *People v. Deere* (1991) 53 Cal.3d 705, 713 [where a judgment was reversed as to penalty but affirmed in all other respects, only errors relating to the penalty phase retrial could be considered in the subsequent appeal, and claim that trial counsel rendered ineffective assistance at the guilt phase was rejected]; *People v. Webb* (1986) 186 Cal.App.3d 401, 409-410 [rejecting claims in second appeal that attacked the conviction, where the matter had been remanded only for resentencing].)

Here, the issue was not properly before the trial court on remand, and it likewise is not properly before us on appeal from those proceedings. Rather, the proper avenue for raising this claim is a petition for writ of habeas corpus.[11] (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 ["Because claims of ineffective assistance are often more appropriately litigated in a habeas corpus proceeding, the rules generally prohibiting raising an issue on habeas corpus that was, or could have been, raised on appeal

---

[10] As defendant points out, we stated in a footnote, "[W]ere we to consider [the defendant's] . . . argument, we would conclude it is meritless . . . ." (*Murphy*, *supra*, 88 Cal.App.4th at p. 397, fn. 3.) However, this dicta does not undermine our holding that the argument was not properly before us in the second appeal.

[11] We note that defendant has filed a petition for writ of habeas corpus, raising the same claim he raises in this appeal. (*In re Duley* (F085892).) His request to consolidate the petition with the instant appeal was denied and ruling on the habeas petition was deferred pending disposition of this appeal. At this time, the petition remains pending.

[citations] would not bar an ineffective assistance claim on habeas corpus."].)  As such, we do not reach the claim in this appeal.  Defendant retains any remedies available to him through a petition for writ of habeas corpus.

## II.    PROCEEDING TO RULING

Defendant argues the trial court erred in ruling on the prior serious felony convictions "in the face of clear evidence that trial counsel did not have access to significant medical records relating to [defendant's] mental health."  In this regard, he contends the trial court should have continued the matter to allow counsel to properly prepare for the sentencing hearing.

We begin with defendant's contention that the court should have granted a continuance of the hearing on the Senate Bill No. 1393 issue.  " '[T]he decision whether or not to grant a continuance of a matter rests within the sound discretion of the trial court.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 650.)  "As part of their inherent power to control the litigation before them, trial courts enjoy broad discretion to deny continuances unsupported by a showing of good cause." (*People v. Brown* (2023) 14 Cal.5th 530, 533.)  " 'The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked.' " (*Fuiava*, at p. 650.)  A court's " 'discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered.' " (*Ibid*.)  Additionally, " '[i]n the absence of a showing of an abuse of discretion and prejudice to the defendant, a denial of a motion for a continuance does not require reversal of a conviction.' " (*People v. Panah* (2005) 35 Cal.4th 395, 423; see *People v. Murphy* (1973) 35 Cal.App.3d 905, 923 ["[D]enial of [a] continuance [does] not require reversal, absent a clear abuse of discretion showing prejudice."].)

Here, defendant did not request a continuance.  Rather, his counsel filed an "objection" to proceeding with the Senate Bill No. 1393 hearing "subject to discovery production ordered December 22, 2017." (Some capitalization omitted.)  The "objection"

(capitalization omitted) was unsupported by any argument. Instead, it was supported only by defendant's 2017 filings and a transcript of the October 19, 2021 hearing. However, defendant's 2017 filings were addressed by the court on December 22, 2017, and no discovery was ordered to be produced. Rather, on that date, the court merely noted the prosecution's ongoing *Brady* obligations. Nothing before the court suggests the prosecution has not complied with those obligations. Counsel's refiling of defendant's 2017 filings does not constitute good cause for a continuance. In the absence of a request for continuance or any showing of cause, defendant has not met his burden to establish the court abused its discretion in failing to grant a continuance.

We also disagree with defendant's contention that the court erred in ruling on the Senate Bill No. 1393 issue "in the face of clear evidence that trial counsel did not have access to significant medical records relating to [defendant's] mental health." Counsel did not assert in the trial court that she lacked any records regarding defendant's mental health that bore on the sentencing issue before the court. Instead, she sought records to litigate the issue of defendant's competency to stand trial, an issue the court properly identified as outside the scope of the remand order. We therefore disagree with defendant's assertion he was denied due process "by denying his counsel records she needed in order to effectively argue for a lesser sentence." Furthermore, we reiterate that defendant's discovery request was addressed by the trial court in 2017 and no discovery was ordered to be produced.[12] Defendant's first appeal did not raise any issues relating to the court's 2017 treatment of the discovery request and any contentions in that regard

---

[12] Moreover, defendant's 2017 discovery request asserted that items were missing from the file he had received from his prior counsel. It therefore appears defendant was requesting copies of previously discovered documents. It also is not clear that all the records at issue in the 2017 discovery request were available to the People. At a 2017 hearing, defendant indicated he "personally placed" many of the missing documents with his various attorneys. Regardless, nothing before the court suggests the People had any pending discovery obligations.

are, like defendant's arguments challenging the evidence in support of the prior serious felony enhancements, outside the scope of the appeal. (*Murphy*, *supra*, 88 Cal.App.4th at p. 395.)

Lastly, we note that many of the mental health records requested in the 2017 discovery request do not necessarily relate to defendant's present mental health status, nor his mental health status at the time of the offenses. Defendant requested (1) "all mental health records in connection with [defendant's] prior convictions," (2) "the results of [defendant's] p[s]ychiatric evaluations that were court ordered by Judge Gene Gomes from 1999-2003," (3) "the results of state commitment a.k.a. 90 day observation ordered by Robert Mardikian – Judge (deceased) date of 90 day observation 1991-1994 unknown," and (4) "all p[s]ychiatric records of the defendant for treatment both <u>out of and in </u>custody during the last 27 years." (Some capitalization omitted.) It therefore is not apparent that these records contain, as defendant suggests, "material that was highly relevant to his ability to argue for reducing his sentence, including especially mental health records that would be probative on the issue of future dangerousness and, for lack of a better word, 'blameworthiness' of [defendant]."

In the absence of a request for continuance, a motion to compel discovery, or any other request for assistance in obtaining records retained by defendant's prior attorneys, Clack's objection does not convince us the court abused its discretion in proceeding to decide the limited sentencing issue before it on remand.

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends he received constitutionally ineffective assistance of counsel on remand because Clack failed to submit any written arguments in support of a favorable exercise of the court's discretion as to the prior serious felony convictions.

Defendant bears the burden of demonstrating ineffective assistance of counsel. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) " '[A] defendant claiming a violation of the federal constitutional right to effective assistance of counsel must satisfy a two-

pronged showing: that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' [Citation.] Rarely is ineffective assistance of counsel established on appeal since the record usually sheds no light on counsel's reasons for action or inaction." (*People v. Woodruff* (2018) 5 Cal.5th 697, 736.) In determining whether counsel's performance was deficient, we consider whether " ' " 'counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.' " ' " (*People v. Johnson* (2016) 62 Cal.4th 600, 653.) However, we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (*Strickland v. Washington* (1984) 466 U.S. 668, 697.)

Here, defendant suggests Clack could have argued that the age of the prior serious felony convictions,[13] as well as defendant's age,[14] merited a more lenient sentence that would have permitted the parole board to consider defendant's release from custody at an earlier date. However, even assuming Clack's representation was deficient in this regard, defendant has not established he was prejudiced. In declining to strike the prior serious felony enhancements, the court considered the trial evidence, the victim impact statements, the report of the probation officer, the facts of the prior serious offenses, and defendant's additional criminal history. Other factors considered salient by the court were the violent nature of defendant's criminal offenses, his lack of remorse, and his failure to accept responsibility. Based on all of the foregoing, the court determined that striking the prior serious felony enhancements would not be in the interests of justice. There is no reasonable probability that the court would have reached a different

---

[13] Defendant was convicted of the prior serious felonies in 1991 and 1994, respectively.

[14] Defendant was 49 years old at the time of the court's decision on remand.

14.

conclusion had Clack presented arguments regarding defendant's age and the age of the prior offenses, both factors which were well known to the court.

Accordingly, defendant has not met his burden of establishing Clack provided constitutionally ineffective assistance of counsel on remand.

## IV. CUMULATIVE PREJUDICE

Defendant argues the combined effect of the above errors denied him due process. However, "[b]ecause we have found no error, there is no cumulative prejudice to evaluate." (*People v. Lopez* (2018) 5 Cal.5th 339, 371.) To the extent we have assumed the existence of error, no prejudice resulted. The same conclusion is appropriate after considering the cumulative effect of any assumed error. (*People v. Valdez* (2012) 55 Cal.4th 82, 181.)

## DISPOSITION

The judgment is affirmed.

DETJEN, J.

WE CONCUR:

LEVY, Acting P. J.

MEEHAN, J.

15.